IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETTY MCCANTS,<br><br>Plaintiff,<br>vs.<br><br>AT&T MOBILITY, LLC,<br><br>Defendant. | Case No.: |

**COMPLAINT**

NOW COMES Plaintiff, Betty McCants ("McCants" or "Plaintiff"), by and through her undersigned counsel, and for her claims against AT&T Mobility, LLC hereby alleges as follows:

**INTRODUCTION**

1. Plaintiff Betty McCants brings this action against defendant AT&T Mobility, LLC ("AT&T" or "Defendant") for violations of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* (the "SCA"), Telecommunications Act, 47 U.S.C. § 222 *et seq.* negligence, intrusion upon seclusion, intentional infliction of emotional distress, and negligent supervision arising out of AT&T's flagrant disregard for Plaintiff's privacy and safety in intentionally disclosing her private cellular telephone data to an unauthorized third party.

2. The Telecommunications Act was enacted to regulate the communications industry and, in part, to promote the security and privacy of individuals' personal information that is transmitted and stored via telecommunications carriers.

3. The SCA was enacted for the purpose of protecting the privacy of electronic communications while such communications are stored. The SCA prohibits unauthorized access

1

to and the improper dissemination of stored communications, including wire, oral, or other electronic communications.

4. The SCA prohibits a person or entity that provides an electronic communication service to the public from knowingly divulging to any person or entity the contents of an electronic communication while it is in electronic storage by that service. *See* 18 U.S.C. § 2702(a)(1).

5. Illinois law prescribes a duty for employers to exercise ordinary care in supervising their employees. This duty is owed to all individuals who could be foreseeably impacted by the employee or his employment.

6. Further, Illinois law prohibits conduct constituting an invasion to one's privacy through intrusion into seclusion. Illinois recognizes a cause of action against a person or entity who intentionally intrudes into the seclusion of another's private affairs in a manner that would be highly offensive to a reasonable person.

7. Despite its statutory and common law duties to refrain from intentionally disclosing its customers' stored communications and confidential proprietary information concerning the use of its mobile telecommunications services, AT&T impermissibly disclosed Plaintiff's private and confidential information to an unauthorized third party.

8. AT&T had knowledge of both its duty to refrain from such conduct, and the nefarious intentions of the third party to whom it intentionally disclosed Plaintiff's private and confidential information.

9. Further, despite having a duty to the general public to refrain from negligently supervising AT&T employees, AT&T failed to exercise these duties with the ordinary care expected of an employer in AT&T's position.

10. As a direct and foreseeable consequence of AT&T's reckless conduct, Plaintiff was subsequently attacked by the third party to whom AT&T had intentionally disclosed Plaintiff's confidential proprietary information.

11. As a result of AT&T's reckless indifference to Plaintiff's privacy and safety, Plaintiff incurred significant tangible and intangible damages. Plaintiff now brings this action to recover for these damages and hold AT&T accountable for its intentional violations of law.

## THE PARTIES

12. AT&T is a Delaware Limited Liability Company with its principal place of business at 1025 Lenox Park Blvd. NE, Atlanta, Georgia 30319.

13. AT&T has identified the following as its registered agent in Illinois: The Corporation Trust Company, 208 S. Lasalle Street, Suite 814, Chicago, Illinois 60604.

14. AT&T provides wireless communication services to millions of subscribers throughout the United States and its territories.

15. AT&T owns thousands of retail stores throughout the United States, including the store located at 8658 S. Cottage Grove Ave, in Chicago, Illinois.

16. Betty McCants is an individual residing in Chicago, Illinois.

## JURISDICTION AND VENUE

17. This Court has original subject matter jurisdiction over the Stored Communications Act and Telecommunications Act claims in this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

18. This Court has personal jurisdiction over Defendant in that Defendant conducts significant business in this Judicial District and the acts and events giving rise to this lawsuit were undertaken in this Judicial District.

19. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) in that a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

## FACTUAL BACKGROUND

20. Plaintiff had a long-term intimate relationship with Kevin D. Ricard ("Ricard"), a man with whom she was living at the time that the incident giving rise to this action occurred.

21. Plaintiff and Ricard had been experiencing difficulties in their relationship, which, in the months leading up to October 11, 2019, had been often characterized by acrimony due to Ricard's mistrust of Plaintiff.

22. On October 4, 2019, Ricard stole multiple personal items belonging to Plaintiff including her cellular phone.

23. Concerned that Ricard would use her cellular phone to harass her contacts, Plaintiff contacted AT&T and requested service be suspended.

24. Service was suspended to Plaintiff's device as requested and remained suspended until Plaintiff regained possession of her device on or about October 6, 2019.

25. When Plaintiff called AT&T to restore service to her cellular device, the AT&T representative asked her why she had originally contacted AT&T to suspend service. Plaintiff explained that Ricard had stolen her phone and that she was concerned about the prospect of unauthorized access to her device and personal information.

26. On October 11, 2019, Ricard visited the AT&T retail location at 8658 S. Cottage Grove Ave, Chicago, IL 60619.

27. Ricard entered the AT&T store and approached one or more AT&T employees (the "Agents") at the retail location and requested Plaintiff's confidential account information, including contacts, call history, and message history so that he could gain insight into Plaintiff's usage activity. While inside the store, Ricard had a visibly agitated demeanor.

28. Ricard was not and has never been an authorized user on Plaintiff's AT&T account.

29. In return for access to this information, Ricard offered to pay $300. The Agents agreed and then began to attempt to access Plaintiff's account data.

30. The Agents subsequently encountered difficulty accessing Plaintiff's account due to the additional security that Plaintiff had requested be placed onto her account following Ricard's prying actions in the days prior to this incident.

31. Undeterred, the Agents sought out and acquired a manager's override credentials that were necessary to bypass the additional security measures that had been placed on Plaintiff's account.

32. A manager who was working at the time, being fully aware of the purpose for which the Agents required the credentials, used manager credentials to bypass the additional security measures and accessed Plaintiff's information.

33. The Agents then showed Ricard Plaintiff's confidential account information and allowed him to take numerous pictures of the information with his cellular phone.

34. After Ricard had been shown Plaintiff's confidential information, he paid the Agents $300 in cash as payment.

35. As a result of the knowledge that Ricard gained from the information that the Agents had provided, he began acting angry, frantic and hysterical. Ricard's condition became so agitated that one of the Agents asked whether Ricard wanted them to call him an ambulance. Ricard declined, leaving the store shortly thereafter in an extremely agitated state.

36. On the evening of October 11, Plaintiff became aware of the intentional breach of her confidential account information when Ricard approached Plaintiff, explained how he had obtained the information, and told her how "easy it was" for him to pay-off the AT&T employees in order to gain access Plaintiff's account.

37. Immediately after this interaction with Ricard, Plaintiff contacted the AT&T fraud department via its 1-800 number to file a formal complaint and inform AT&T about the Agents' conduct. Plaintiff spoke with an individua named "Schelle" and was subsequently transferred to a fraud department manager named "Devin." The manager confirmed the breach of Plaintiff's account and referenced particular time stamps evidencing when and where the account was accessed.

38. Over the next five days, Ricard harassed and threatened multiple individuals whose information he had obtained through his transaction with the Agents.

39. On October 17, 2019, Ricard confronted Plaintiff at her home and showed her screenshots on his phone of the information that the Agents had provided him. Ricard told Plaintiff that he had paid the Agents $300 cash in exchange for Plaintiff's private data.

40. Shortly thereafter, Ricard lured Plaintiff into a secluded part of her house where he began to attack her while berating her about the information he received from AT&T. Ricard proceeded to sexually assault Plaintiff, stripped her clothes off, and ferociously beat Plaintiff in the head and neck area.

41. Ricard bashed Plaintiff's head into the washer/dryer and knocked Plaintiff to the ground where he proceeded to punch and kick her.

42. Ricard then took a container of gasoline and proceeded to cover Plaintiff's body in gasoline while she remained on the ground. Ricard continued to punch and kick Plaintiff and forced her to drink the gasoline.

43. After Ricard had thoroughly soaked Plaintiff in gasoline, he took out a lighter. As Ricard was struggling with the lighter, Plaintiff escaped and made her way outside.

44. After escaping her house and fleeing her attacker, Plaintiff collapsed in a nearby ally where she fell unconscious.

45. The police were called by several individuals including Plaintiff's neighbor who had heard Plaintiff screaming. Police arrived on the scene shortly thereafter and located Plaintiff lying unconscious in the alleyway where she had collapsed.

46. Plaintiff was transported to the Bernard A. Mitchell hospital at the University of Chicago Medical Center where she was admitted to the trauma department and treated for severe injuries.

47. Plaintiff received treatment for severe facial and neck wounds, including frontal scalp, left periorbital, and right premolar soft tissue damage and a hematoma, ligament and nerve damage in her wrists, a concussion, eye trauma, bruising over her entire body, and severe chemical burns on her upper and lower body.

48. Plaintiff had difficulty breathing, significant facial swelling with her left eye swollen completely shut, and significant tenderness to palpation all over the body including the arm, chest wall, and upper back and neck.

49. Plaintiff remained in the hospital until October 19, 2019. She was discharged with prescriptions for pain and eye trauma and was given instructions for follow-up care for physical therapy, concussion, and eye injuries at various outpatient facilities. Plaintiff attended the numerous follow up appointments and weekly physical therapy sessions recommended by her doctor.

50. Plaintiff continues to experience physical and mental suffering as a result of the injuries inflicted on her during the attack, including but not limited to: daily pain in her left wrist, headaches, balance disruption, and light sensitivity. Plaintiff also has permanent scarring on her lip and continues to suffer persistent skin irritation, blemishes, and hair loss as a result of being drenched in gasoline.

51. Plaintiff suffered significant eye pain and disruption to her vision, some of which took over twenty weeks to heal with other damage permanent.

52. Plaintiff now requires the use of a wrist brace, undergoes continuous pain management therapy and may require a dangerous surgical procedure in the future to treat the damage done to her left wrist.

53. Plaintiff has also suffered lost income resulting from her inability to return to her job from October 18, 2019 to January 3, 2020 – approximately 53 working days.

54. Having not received a return call or any update regarding her October 11th complaint, on October 22, 2019, Plaintiff again contacted the AT&T fraud department. On that date, a case identification number was generated, and investigator Maria Wasar was assigned to look into the October 11th breach of privacy incident.

55. In the several weeks following the attack, Plaintiff participated in numerous interviews with Chicago Police officers and detectives regarding this incident. The continued

recollection of the events of October 17th and the persistent recounting of the gruesome details of her attack have caused her to frequently return to a traumatic mental state.

56. On November 26, 2019, Plaintiff received a letter from Nena Romano, Director of Compliance for AT&T. The letter stated that "we have confirmed your Customer Proprietary Network Information (CPNI) was recently accessed without your authorization." The letter further stated "[o]n behalf of AT&T, please accept my apology for this incident. Simply stated, this is not the way that we conduct business." *See* **Exhibit A** (AT&T's November 26, 2019 letter to Plaintiff).

57. A corporation can act only through the conduct of its agents.

58. AT&T is liable for the actions of the Agents as their conduct of accessing and disclosing CPNI is part of the duties for which they were employed to perform, the conduct occurred while they were "on the clock" within normal store operating hours, the conduct was actuated, at least in part, in furtherance of AT&T's business and the conduct was ratified by a manager.

59. Plaintiff now brings this complaint to recover for her injuries caused by AT&T's willful disregard of and wanton indifference to Plaintiff's safety and privacy.

## COUNT I
### Violation of § 2702(a)(1) of the SCA

60. Plaintiff repeats and re-alleges the facts and allegations made in Paragraphs 1-59 of this Complaint as if fully set forth herein.

61. Section 2702(a)(1) of the SCA prohibits "a person or entity providing an electronic communication service to the public [to] knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service."

62. AT&T is an entity providing an electronic communication service.

63. AT&T violated § 2702(a)(1) when AT&T knowingly and willfully divulged to Ricard the contents of Plaintiffs' text communications while those communications were in electronic storage held by AT&T.

64. AT&T's conduct was a conscious and voluntary departure from its statutory obligations imposed by § 2702(a)(1) and demonstrated its utter indifference to and conscious disregard for Plaintiff's safety and privacy.

65. Plaintiff suffered actual damages when AT&T disclosed Plaintiff's confidential information to Ricard as the divulged information caused Ricard to become so enraged that he subsequently attacked Plaintiff, resulting in physical, mental and economic injury.

66. Had AT&T abided by its statutory obligations to refrain from disclosing Plaintiff's confidential account information, Ricard would not have had access to the information that led him to attack Plaintiff.

67. As a result of AT&T's intentional conduct, pursuant to 18 U.S.C. § 2707, Plaintiff is entitled to the sum of the actual damages suffered by her, statutory damages in an amount of no less than $1,000, punitive damages, and reasonable costs and attorney's fees incurred in pursuing her claims.

### COUNT II
### Violation of § 222 of the Telecommunications Act
### 47 U.S.C. § 222 *et seq.*

68. Plaintiff repeats and realleges the facts and allegations made in Paragraphs 1-67 of this Complaint as if fully set forth herein.

69. Section 222(a) of the Telecommunications Act mandates that every telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to, other telecommunication carriers, equipment manufacturers, and *customers*.

70. Section 222(c)(1) of the Telecommunications Act mandates that except as required by law or with approval of the customer, a telecommunications carrier may only use, disclose, or permit access to CPNI in its provision of the telecommunications service from which such information is derived or services necessary to, or used in the provision of such telecommunications service.

71. All or part of the information shared by AT&T with Ricard on October 11, 2019 constitutes CPNI.

72. AT&T is a telecommunications carrier as defined by the Telecommunications Act.

73. AT&T violated §§ 222(a) and 222(c)(1) when it failed to protect the confidentiality of Plaintiff's confidential proprietary information and CPNI by intentionally and unlawfully disclosing the same to an unauthorized third party.

74. In its November 26, 2019 letter to Plaintiff AT&T explicitly acknowledges that AT&T breached its duty to safeguard Plaintiff's confidential proprietary information and CPNI by stating: "We have confirmed that your Customer Proprietary Network Information (CPNI) was recently accessed without your authorization" and "On behalf of AT&T, please accept my apology for this incident." *See* **Exhibit A**.

75. As a direct and foreseeable result of AT&T's willful disclosure of Plaintiff's confidential proprietary information and CPNI to an unauthorized third party, Plaintiff was subsequently physically attacked by the individual to whom AT&T had disclosed the same, thereby causing Plaintiff physical, mental and economic injury.

76. Section 206 of the Telecommunications Act prescribes liability for any common carrier that commits any act or omission deemed unlawful by the Telecommunications Act.

77. Additionally, § 207 of the Telecommunications Act creates a private right of action for any person who is injured as a result of a common carrier's violation of any of the provisions of the Telecommunications Act.

78. AT&T is a common carrier as defined by the Telecommunications Act.

79. AT&T is liable to Plaintiff for the damages that she has suffered as a consequence of AT&T's violation of the Telecommunications Act, as well as the reasonable attorney's fees and costs incurred by Plaintiff in pursuing her claims.

## COUNT III
### Negligence

80. Plaintiff repeats and re-alleges the facts and allegations made in Paragraphs 1-79 of this Complaint as if fully set forth herein.

81. The Telecommunications Act, SCA, AT&T's Privacy Policy, and AT&T's own statements also establish the existence of a duty of care to Plaintiff concerning the security of her confidential information, including her CPNI. *See* **Exhibit A (Letter from AT&T)**; **Exhibit B** (AT&T's Privacy Policy) ("We use CPNI internally and share it outside of AT&T only when conforming with applicable regulations and orders from the Federal Communications Commission. . . . "We do not share your CPNI with anyone outside of the AT&T affiliates defined above or our authorized Agents or vendors without your consent, with the following authorized exceptions: Court orders; as authorized by law; fraud detection to provide you service and route your calls; for network operations and security; aggregate (grouped) information and information that doesn't identify you personally. . . . "It is your right and our duty under federal law to protect the confidentiality of your CPNI.")

82. AT&T breached its duty of care when it accepted compensation in return for providing Plaintiff's confidential proprietary information and CPNI to an unauthorized third party.

83. AT&T's conduct was an extreme, conscious, and voluntary departure from the standard of care that would have reasonably been expected under the circumstances.

84. AT&T's conduct demonstrated its utter indifference to and conscious disregard for Plaintiff's safety and privacy.

85. Had AT&T abided by its duty to safeguard Plaintiff's confidential proprietary information and CPNI, Ricard would not have had access to the information that led him to attack Plaintiff.

86. At the time AT&T breached its duty of care, it was foreseeable and even probable that the confidential proprietary information and CPNI that AT&T provided to Ricard would cause him to attack Plaintiff given his visible anger and disclosed reasons for wanting the information.

87. As a direct and proximate result of AT&T's breach of its duty of care, Plaintiff has suffered and will continue to suffer substantial damages, including medical and other healthcare-related expenses, lost income, and physical and mental pain and suffering.

88. AT&T is liable to Plaintiff for the damages she has suffered and will continue to suffer. AT&T is also liable for punitive damages due to AT&T's reckless disregard for and indifference to Plaintiff's privacy, safety, and security.

## COUNT IV
### Intrusion Upon Seclusion

89. Plaintiff repeats and re-alleges the facts and allegations made in Paragraphs 1-88 of this Complaint as if fully set forth herein.

90. Plaintiff had a reasonable expectation in the privacy of her confidential proprietary information and CPNI that was maintained by AT&T.

91. AT&T intentionally intruded upon Plaintiff's solitude when it accessed Plaintiff's confidential proprietary information and CPNI without her permission and disclosed it to an unauthorized third party.

92. AT&T's intrusion was highly offensive to Plaintiff and would have been highly offensive to any reasonable person.

93. As a result of AT&T's highly offensive and unauthorized intrusion into Plaintiff's private affairs and concerns, Plaintiff has suffered damages, including physical pain and suffering, emotional damages, mental anguish, humiliation, fear, anxiety, and persistent fear for her safety and the safety of her family.

94. As a direct and proximate result of AT&T's intrusion upon Plaintiff's solitude, Ricard physically attacked Plaintiff causing her substantial damages, including medical and other healthcare-related expenses, lost income, and diminished earning capacity. Further, Plaintiff has suffered physical and mental pain and suffering as a direct and proximate result of AT&T's intrusion upon Plaintiff's solitude. Plaintiff has suffered such damages and will continue to incur additional medical and other healthcare related expenses in the future.

95. AT&T is liable for Plaintiff's damages caused by its unauthorized and highly offensive intrusion into Plaintiff's private affairs and concerns. Further, because AT&T's conduct was willful and wonton, Plaintiff is entitled to punitive damages.

## COUNT V
### Intentional Infliction of Emotional Distress

96. Plaintiff restates and re-alleges the facts and allegations made in Paragraphs 1-95 of this Complaint as if fully set forth herein.

97. Plaintiff hereby further asserts a claim against AT&T for its intentional infliction of emotional distress.

98. AT&T's conduct as described in the forgoing paragraphs was extreme and outrageous and would cause a person of ordinary sensibilities to suffer emotional distress.

99. AT&T intended to cause, or acted with reckless disregard for the probability that its conduct would cause, severe emotional distress.

100. As a direct and proximate result of AT&T's conduct, Plaintiff suffered severe and lasting emotional distress, including fright, worry, trauma, and anxiety that no reasonable person could be expected to endure.

101. But for AT&T's conduct, Plaintiff would not have experienced the extreme emotional distress that she suffered as a direct result of AT&T's disclosure of Plaintiff's private account information and CPNI.

102. Further, Plaintiff's extreme emotional distress was foreseeable, as AT&T had knowledge of the purpose for which Ricard sought access to Plaintiff's private information and CPNI.

103. AT&T's conduct described in the forgoing paragraphs was willful and was undertaken with reckless indifference to Plaintiff's rights.

104. AT&T is liable for Plaintiff's damages caused by its intentional inflection of emotional distress. Further, because AT&T's conduct was willful and wonton, Plaintiff is entitled to punitive damages.

**COUNT VI**
**Negligent Supervision – In the Alternative to Counts I through IV**

105. Plaintiff pleads this Count V in the alternative to Counts I through V. Plaintiff restates and re-alleges the facts and allegations made in Paragraphs 1-59 of this Complaint as if fully set forth herein.

106. An employer, such as AT&T, has a general duty to reasonably supervise all of its employees to make sure they engage in appropriate behavior and follow the law and any rules of employment.

107. This duty is owed to all individuals who could be foreseeably impacted by the employees or their employment.

108. Accordingly, AT&T had a duty to supervise the employees working at its 8658 S. Cottage Grove Ave. location.

109. AT&T's employees are given access to and are responsible for the safeguarding of AT&T's customers' confidential proprietary information and CPNI.

110. This confidential proprietary information and CPNI includes sensitive and confidential data such as customers' usage records, billing information, location data, contact information, photographs, videos, application data, and records of private correspondence.

111. An employer in AT&T's position could have and should have reasonably foreseen that, absent adequate supervision, employees could abuse their access to a customer's confidential proprietary information and CPNI for the agents' own personal benefit.

112. AT&T failed to adequately monitor the conduct of its employees at its 8658 S. Cottage Grove Ave. location, as demonstrated by the unlawful conduct of the Agents and store manager.

113. As such, AT&T breached its duty to supervise the employees that it had hired to conduct its business.

114. Plaintiff was damaged by AT&T's breach of its duty to supervise.

115. As a direct result of AT&T's failure to supervise its employees, Ricard was able to obtain Plaintiff's confidential proprietary information which led him to attack Plaintiff.

116. A reasonable performance of the duty to supervise could have prevented the unlawful dissemination of Plaintiff's confidential proprietary information and CPNI and the resulting substantial injuries suffered by Plaintiff.

117. AT&T is therefore liable for its negligent supervision of the employees which directly and proximately caused Plaintiff's substantial injuries, including: past and future medical and other healthcare-related expenses, lost income, diminished earning capacity, and physical and mental pain and suffering.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Betty McCants requests that this Court enter judgement in its favor and against AT&T Mobility, LLC by:

a) Awarding Plaintiff actual damages pursuant to 18 U.S.C. §2707 as a result of AT&T's violations of the Stored Communications Act;

b) Awarding Plaintiff actual damages pursuant to 47 U.S.C. §206 as a result of AT&T's violations of the of the federal Telecommunications Act;

c) Awarding Plaintiff punitive damages pursuant to 18 U.S.C. §2707(c) as a result of AT&T's willful and intentional violations of the Stored Communications Act;

d) Awarding Plaintiff general and special damages for her past and future pain and suffering and physical and emotional anguish and in excess of ten million dollars $10,000,000 plus pre-judgement interest, as a result of AT&T's negligent conduct;

e) Awarding Plaintiff punitive damages due to AT&T's gross negligence demonstrating its reckless disregard for and indifference to Plaintiff's privacy, safety, and security in an amount to be determined by the jury.

f) Awarding Plaintiff compensatory and punitive damages for AT&T's willful and wonton intrusion upon Plaintiff's private affairs and concerns in an amount to be determined by the jury;

g) Awarding Plaintiff all attorneys' fees and other litigation costs reasonably incurred by Plaintiff in pursuit of her claims pursuant to 18 U.S.C. §2707(b) & (c); and

h) Granting any such other relief as this Court deems just and necessary.

## JURY DEMAND

The Plaintiff, Betty McCants, demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: April 24, 2020

Respectfully submitted,

*/s/ Joseph S. Messer*
Joseph S. Messer – IL# 6200036
Messer Strickler, Ltd.
225 W. Washington St. Suite 575
Chicago, IL 60606
Tel.: (312) 334-3440
Fax: (312) 334-3473
jmesser@messerstrickler.com